Good morning, Your Honor. This is Chris Bugbee from Mr. Swisher. I would ask for five minutes. Would you speak in the microphone, please? I will. Thank you. Thank you, Your Honor. Is that better? Much better. Mr. Swisher seeks a new trial first and foremost because his trial counsel hurt more than helped, hindered more than protected. At the same time, we also maintain that there were errors made both by the district court and by the government. Within all of the errors that were set out, that are set out in our briefing, we'd also maintain that there is an element of the ineffective assistance claim, which ultimately supports our claim that there was cumulative error. And what I'd like to start talking about is the government's untimely disclosure of its forensic handwriting expert. Now, I'll get right to what I think is the heart of the issue, and that is that the government maintains, which is true, that it called that expert in its rebuttal case. And so, therefore, the government maintains that Rule 16 does not apply, and it had no obligation to disclose either the fact that it would call an expert witness or a summary of that expert's testimony, which would be required under Rule 16 where Rule 16 does apply. Was a continuance requested? There was not a continuance requested, no. Doesn't that hurt your case? Yes, it does hurt our case, admittedly. At the same time, we would maintain, even if this particular issue in itself is insufficient to grant Mr. Swisher a new trial, again, it does support the request or the argument that there is cumulative error. And it also feeds into the claim of ineffective assistance. Well, let me ask about that. Yes, Your Honor. How do you argue that trial counsel's alleged shortcomings are readily apparent from the record, yet earlier in one of your affidavits you reported that the record will need to be supplemented by the taking of testimony in an evidentiary hearing in order to address ineffective assistance of counsel? I believe that was maintained. Let me say this. There was an attempt by Mr. Swisher to file a simultaneous 2255 action alleging ineffective assistance. And that's been held in advance, right? That is correct, yes. And the trial judge, in response to Mr. Swisher's request that the 2255 proceed simultaneously with this appeal, requested that counsel provide briefing, even though I was not the attorney on Mr. Swisher's attempted 2255. That affidavit was directed to the 2255, not to this appeal. I see. In fact, the argument that Mr. Swisher made, which I believe is appropriate and I think had some basis, even though the request was denied, was that there is sufficient facts apparent in the record here on appeal that the argument could be made on appeal and still that there may be other issues that could be further wrought out on a 2255 by way of taking the appeal. So what are the facts? I'm sorry, Your Honor. What are the facts that are sufficient on the current record to show an ineffective assistance? Well, I believe they're well set out in the record. But if I may, I can go ahead and move on to that issue if you would prefer. What we prefer, counsel, is to decide the case correctly, and we assume you are ready to tell us what we need to do in order to do it. And you are correct. I think that's a fair assumption. Let me move on to that issue. Your Honor, first I'll talk about the cross-examination by defense counsel of the government's witness who is Jeffrey Shattuck. That was the government's witness who basically was called as a records expert regarding military records. The cross-examination that was conducted, again, as I indicated in my opening statement, hurt more than helped Mr. Swisher. In fact, when you look at the transcript of that cross-examination, it looked more like a prosecutor examining that witness than a defense attorney. The simple fact is the testimony that was elicited, and this was in reference to the exhibit that was Colonel Woodring's letter that apparently accompanied the DD-214 that was alleged to be forged. And the testimony which defense counsel elicited was simply that Mr. Shattuck believed that that document flat looked unusual. The implication of that was that the defense theory here was extremely odd, and it seems to have been something to the effect that Mr. Woodring, was that his name, was writing to Mr. Shattuck, and had these odd motives and long-term attempt to harm Mr. Swisher and that this letter was part of some plot to do that, essentially. Yes, understood. I understand that was at least part of the defense theory. As to which it would therefore make sense to have an unusual letter. Understood to that degree, yet at the same time there's no question that the real focus of this trial was that the DD-214 and the letter purported to be forgeries. The government also called witnesses that analyzed the signature of then-Captain Woodring, now Colonel Woodring, at the time of his retirement, Colonel Woodring, but to say that they were basically forgeries or that they were photoshopped on top of an actual document. So the bottom line is that even though that was one of the defense theories, that testimony that was elicited went right to the heart of whether Mr. Swisher committed a forgery of either of those documents. And then that is further exacerbated when we look at the testimony of Annette Ammerman, again basically a records expert that the government called in its case-in-chief. And she talked about it was a defense exhibit. It was 2047, and it was the document that was purportedly a letter or some sort, a memo from a General Erskine. And that document was stipulated to. In fact, it was offered by the defense. The government stipulated it was in the record. It was offered during the testimony of Ms. Ammerman, who really just basically shot holes through that document and pretty much definitively showed that to be a joke, both because of the way it was constructed and then also because of the way that it was obtained. And that goes to a defense expert that was later called, and that was Mr. Sellers, Douglas Sellers. He was called by the defendant to testify that he had obtained that document on the Internet, that he, after obtaining it, attempted to find a legitimate source of the document, was unable to do so, and then when he went back to try and find the document again, could not find it.  Kagan. Let me ask you in general to get a ---- aside from the AIC, what do you think is your strongest argument? Carvin. In reference to the ineffectiveness? Kagan. No, just more generally. And why don't you tell us what that is? Carvin. Well ---- Kagan. And the overall problem here is that you had ---- I mean, the reason why bad facts may have come out was because the facts were bad. And it becomes difficult to blame it on the lawyer. Carvin. Understood. And, you know, I ---- typically if you ask me what's my best argument, I could immediately tell you. I think there are several arguments that have equal weight or at least similar weight. That is the untimely disclosure of the defense expert. I think they're in reference to ---- Kagan.  Go ahead. You go ahead. I was simply going to say that with regard to that, my understanding is that she was put on only to rebut a detail of the defense expert's testimony, which wasn't necessarily able to be anticipated, i.e., the question of whether you could tell from a copied document of this kind anything about its authenticity. She wasn't really testifying to the authenticity of the ---- directly to the authenticity of the document. And, therefore, she was, in fact, a rebuttal witness. Now, why not? Well, our argument is that that expert and the government had the substance of Mr. King's testimony months prior to trial, that everything Mr. King would testify to was available. The government knew it. And they called Ms. Cox as a rebuttal witness, but she could have very easily, under the same circumstances, been called as a witness in their case-in-chief. And you know the difficulty, at least from my perspective, and I just got one vote, so you may not even want to ---- They'd have to know what he's going to do. You say they knew. They didn't know. You don't know, I hope, that the defense doesn't know until the case unfolds. Isn't that so? Well, that's true to some degree, Your Honor. And I'll make this quick because I'd like to reserve some time. But I will note that as a defense counsel, one of the main issues that I deal with in preparing a case for trial is ensuring that I have the appropriate disclosures of government experts, but more importantly, and what I often don't get and I have to fight for, is the summary of their testimony. And I'm entitled to that under Rule 16. And those things that an expert comes to court to testify to that have not been disclosed pursuant to that summary are not admissible. And so ---- And I'm entitled to that in rebuttal. I suppose if the government allows that expert to go beyond the summary that was provided and there's something that comes out beyond what was included in the summary, then I would agree that that would be true. There would be an opportunity to rebut. There's no indication from this record that that's the case. Do we know what's in the summary? Is the summary in the record? I don't believe the summary is in the record. How can we tell that? We can't. That isn't, in fact, my point. There's nothing in the record to show that that's the case. But that would be your burden. If you're going to try to show there's a problem, you'd have to show that there was something in the summary as to the point that the rebuttal went to, and you haven't shown that. I would maintain, Your Honor, that they called the witness. They called the witness. I guess I don't have a response to that. I would maintain the argument, but I would like to reserve my time. Thank you. Thank you. Good morning. Jessica Fair from the District of Montana, and I was an appointed Special Assistant Attorney General in Idaho for this case. It sounds to me like the two issues that were discussed with defense counsel were, first, the rebuttal witness. And I think it's clear in the government's briefing that this was a decision that was made during trial. This is a decision that I made after listening to how the government's case went in, listening to the first day of defense testimony, and not being quite sure what I was going to hear from Mr. King, who was the expert designated by the defense attorney. I think it's important to note that in the opening statement to the defense, and it just gives you an example of how in flux this trial was, defense counsel actually states that they plan on calling two handwriting experts. And that was what we were looking at as I walked into trial on the first morning. That all shifted and changed, and in preparing for my cross-examination for Mr. King, the idea was floated. Well, what if he goes towards the authenticity of the document? What if he talks about how he can tell it's an actual copy of a real document? And that was something that we had never really focused on. And as you can tell from the testimony of Ms. Cox, that was the focus of the government's testimony. She testified. Do we know whether that was in his original statement? I do, Your Honor. It was never questioned by the district court, which is why the actual expert disclosure is not in the record. There was no question as from the district court as to why we were calling this rebuttal witness. The question of Photoshop and whether or not Photoshop, and I think in the record, again, it's a cold record, but when I asked Mr. King on cross-examination, well, these documents could have been made by Photoshop. When he told me no, I quite honestly was surprised, which of course is extra record, but that's why the focus was then to bring in Ms. Cox simply to testify to that. Now, the reason that she wasn't called, the government didn't call an expert witness in its case-in-chief is that we didn't need one. Our contention had been all along that these documents, no matter how they were created, were forgeries. Mr. Swisher's theory, I think Judge Berzon stated it correctly, that it was an odd defense. Mr. Swisher maintained throughout the trial, post-trial proceedings, 2255 and this appeal, that this mission happened, that he really went into North Korea and because he had an affair with his personnel officer's girlfriend some two years later, and that somehow that personnel officer was able to erase all mention of this mission and the Marines that were killed. And I think that is the framework with which not only the expert testimony that was offered, but the ineffective assistance of counsel claim that's now made in this direct appeal have to be viewed. Briefly, as to the testimony that Mr. Bugbee pointed to under ineffective assistance of counsel, Mr. Shattuck testified that testimony was going directly regarding the Woodring letter to that odd relationship. That was part of the defense. Ms. Ammerman's testimony, the Erskine letter, and I appreciate defense counsel's thought that I was lying in wait to pounce on this letter. And really it was in trial analysis trying to figure out this is what Mr. Swisher's defense is, that this actually happened. This is the only piece of paper that this man can put forward that even gives some sort of credence, however slight, to his theory. Even if you were lying in wait, there would be not a lot this Court could do about it because you can't rebut until the testimony comes in. Correct, Your Honor. Correct, Your Honor. And as I've said, I wish that I had had that much forethought into stipulating to the admission of the Erskine letter. I think the other testimony that was focused on by defense in the brief as being an issue was the testimony of Travis King, their expert witness. And there were just some wonderful moments as a prosecutor in that testimony where I was able to do some good cross-examination. That cross-examination opened the door to what I think is a big issue, and that's the Photoshop issue. It's the only issue Ms. Cox testified about disagreeing with the defense. And as has been pointed out, she didn't say that the documents are authentic. She said you cannot say based on these copies, and you have the copies that are as good as they were at trial in the exhibits that are produced in our SCRs of those documents, of those two DD-214s. They're terrible. That's all we had to work with. Well, aside from the testimony the defense solicited from Travis King, didn't Nancy Cox have information that was relevant to the case? I mean, it raises the question as to why the government didn't bring her on in the case in chief. They knew her testimony was relevant and that would address central issues in the case. Was there a reason to wait? You know, quite honestly, Your Honor, the strategy in my own mind was that what Ms. Cox was going to testify about was that those signatures appeared or, excuse me, that Mr. King was going to testify about is that those signatures all appear to all be written by Captain Woodring. And I had that disclosure approximately 60 days before trial. I got it January 29th, and trial was April 3rd. What I didn't realize, and you can tell from looking at those documents, the blind eye can tell, those signatures are very similar. And so my strategic decision was I'm not going to argue about the authenticity or the signatures on really bad photocopies. I'm going to focus my case on that supposedly 111 Marines died and there's no record of it and that this is all an evil plot by a captain to avenge his scorned lover. I mean, this is something that comes out of, you know, lifetime made-for-TV movies. And so that was the focus of my case, Judge Nelson, was I wanted to look at what was the real history of this group, this mission, this infantry, and not on whether or not these bad copies were actually legitimate. So that was the reason. And the Photoshop issue, it just blew me out of the water that he would say you can't Photoshop a document like this, that he could tell 100% that you couldn't. And I had Ms. Cox there. She flew in on the red eye and arrived at the courthouse shortly before her testimony and couldn't help myself. Thank you. I have nothing further unless the Court has any specific questions about other issues not already addressed. That's fine. Thank you. The U.S. Attorney indicates that, which is true, that Mr. Swisher maintained all along that all of these events really happened. What follows from that is that he always maintained that the documents, that is the DD-214 and the Woodring letter, really existed and that the photocopies that were available during trial were copies of actual documents and that they were, in fact, authentic. And I think that answers Your Honor's questions about whether that fact was included in Mr. King's summary. Now, Ms. Farrer is correct. I can't tell you what was in the summary. I didn't represent Mr. Swisher during trial. There was a fallout between Mr. Swisher and his attorneys. Those documents were not filed, so they are not part of the record. Again, I've talked about how in each of these claims, there is interwoven within them some element of the ineffective assistance claim, and that is indeed part of it. It's just not there where it should be. But the bottom line is, Ms. Farrer and the government, they knew that the authenticity of that document was an issue, it was paramount to the case, and that Mr. King was being testified to talk about the signatures and the authenticity, and that should have been anticipated. And it also should have been anticipated that they would want their own expert. Kennedy.  I don't know. What would be the ruling of a court? Assuming we listened and agreed with your argument, what would be our bottom line? We'd say that if you anticipate X and you have rebuttal, you must share your rebuttal based on your anticipation, even if there's nothing at that moment to cause you to reveal it? Well, I don't know. How would you phrase it? You know, to some degree, I think you'd have to look at these on a case-by-case basis, but you also have to look, and I've quoted. Well, if we look at it at a case-by-case basis, we'd find that there's never been a case where somebody argued you've got to reveal your rebuttal before you hear the direct. Would we? No, that's true, and I'm not arguing that. What I'm saying is that Ms. Cox was, in fact, an expert witness who could have been called and perhaps should have been called in the case in chief. Why should she have been called? Well, that's a strategic decision on the government's part. So I'm not saying that they even had to. But what I am saying is when you have an expert witness and you know that they're going to be testifying or at least they may testify. Well, the record doesn't show it, but she said she flew in on the red eye and was ready to testify the next morning. Now, if they knew she was going to have to testify, she wouldn't be flying the red eye. How do you do it? Or if you anticipated that they might testify to a material issue in the case. And I'm not suggesting that they actually intended to. I don't take you down that road. But you've got a strong argument somewhere, I think. If you have, as the judge suggested, you ought to make it. I think that's what I have on that issue. And I don't think I'm going to add anything by continuing with it. I think Your Honors understand my argument. Thank you very much. Thank you both for your argument. The case of United States v. Swisher is submitted. We will go on to United States v. Juvenile A.
judges: Farris, Nelson D. W., Berzon